### No. 6930.

#### Mrs. Chatenond and Husband vs. Evariste Hebert et al.

Where a surviving husband, who under a judgment in a partition suit, afterwards annulled, has bought certain community property in which he had a fourth, and his children also a fourth undivided interest, subsequently by notarial act pledges to a creditor his and their share of the notes executed by him as vendee in the partition sale, secured by mortgage and vendor's privilege on said property—the mere fact that his children of age join in the notarial act to give their consent to the pledge of the notes, in which they claimed an interest, will not bind them for the debt thus secured, nor will it amount to their renunciation of the previous mortgage they have on their father's interest in said property, on account of paraphernal claims of their mother.

Where a question of estoppel, as between certain parties to a suit, has been expressly, or by necessary implication raised, and definitively passed on, it can not again be put at issue in any subsequent suit between them.

The nullity of the principal debt annuls the mortgage securing it.

APPEAL from the Fifteenth Judicial District Court, parish of Assumption.   *Beattie, J.*

*Edward N. Pugh* and *L. W. Folse* for defendants and appellees.

*Armand Pitot* and *J. R. Whittington* for intervenors and appellants.

The opinion of the court was delivered by

Spencer, J.   The facts of this case are very complicated, but it is necessary to state them.

Evariste Hebert in community with his wife, and Frederick Avet in community with his wife, were joint and equal owners of a sugar plantation in the parish of Assumption.   Hebert's wife died in 1860, leaving, by her marriage with him, ten minor children, of whom Hebert qualified as natural tutor in 1861.   Frederick Avet also died, leaving a widow (now Mrs. Ballu) and a number of children, of whom plaintiff is one.

After the death of Mrs. Hebert and Frederick Avet, the property belonged as follows: One fourth to Evariste Hebert and one fourth to his ten children by inheritance from their mother. One fourth to the Widow Avet (Mrs. Ballu), and one fourth to the children of Frederick Avet.

On December 24, 1867, Evariste Hebert, alleging himself to be owner of *one undivided half* of said plantation, brought suit in the Second District Court of New Orleans against the widow and heirs of Avet, owners of the other half, for a partition of said plantation, and praying for a sale thereof to effect the same.

On February 4, 1870, judgment was rendered by the Second District Court decreeing the partition and ordering the sale, fixing terms, etc., and referring the parties to Selim Magner, notary, to partition the proceeds.

At the sale the plantation was bought by Evariste Hebert for $24,000, one fifth to be paid cash, and the balance in one, two, three, and four years, to be represented by notes secured by mortgage and vendor's lien. The sale having been completed and ten notes executed, the parties went before the notary on twenty-eighth of June, 1870, and passed an act of partition. The mass to be divided was stated by the notary as follows:

Cash . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $4800 00
Four notes of twelve hundred dollars each, at one year . . . . . . . $4800 00
Two notes of twenty-four hundred dollars each, at two years . . $4800 00
Two notes of twenty-four hundred dollars each, at three years . . $4800 00
Two notes of twenty-four hundred dollars each, at four years . . $4800 00

Making . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $24,000 00

Which notes were by paraph identified with the act of partition.

He then states the "debts due by the plantation and parties interested, and to be deducted from the proceeds of the sale," as amounting (detailing the items) to $5808 77. Leaving "amount to be divided, $18,191 23; or $9095 61½ to each said Mrs. Avet and Evariste Hebert." These debts of $5808 77 were due in nearly their entirety to one S. Cambon.

It is then stated that the cash only amounting to $4800, and the debts being $5808 77, the difference, $1008 77, will have to be made up by said Hebert and Mrs. Avet; said Avet now paying in cash her part, $504 38½, and said Hebert paying in cash like sum. Mrs. Avet then acknowledges to have received $2400 in cash, and five of said notes, to wit: two for $1200 each, and three for $2400 each, and accepts the same as her and her children's share in said plantation; and then declares that the said $2400 in cash, and the said $504 38½ are by her "to be

applied as so much toward the payment of the afore established liabilities," being one half thereof. Hebert then declares that although it is stated in the *procès verbal* of sale that he had paid $4800 cash, he had in truth only paid $2400 (Avet's share), and that by agreement and arrangement time was to be granted him to pay his share of the said liabilities; and, in order to carry out said agreement, it is stipulated that " in order to secure the payment on the part of him, said Evariste Hebert, first, of the sum of $2400, being the balance due cash; second, the sum of $504 38½ " (being the excess of his half of debts over the $2400), as stated in above account, and the further sum of $468 50 due by him individually to said Cambon, all his, said Hebert's, share of the said notes (being five in number) representing his portion in this partition, shall remain on deposit in the Citizens' Bank, in the joint names of Armand Pitot and Selim Magner as a pledge until final payment of his said indebtedness. It is then stated that this pledge shall create no novation of the debt due to said Cambon for supplies, so as to destroy his privilege on the crops, etc., but that it shall remain in force to secure said Cambon his claim or any transferee thereof, up to the amount due him, the payment of which is extended to April 1, 1871, by Cambon, who intervenes and becomes party to the act.

Armand Pitot as agent of certain of Hebert's children, to wit: Emile L., Oscar F., Aubert P., Rodolph, and Louise, wife of McNeil, annexing his power of attorney, intervenes in the act; "said constituents being interested in this partition by reason of their rights in the estate of their deceased mother," and agrees and consents, on behalf of his constituents, to the pledging of the said notes, in which they are "interested," "in order to secure the payment on the part of him, said Evariste Hebert," of the debts before stated.

Evariste Hebert and Mrs. Avet then declare this partition final of the said property so " held by undivided halves between them." The act is signed by the agents of Evariste Hebert, widow and heirs of Avet, by S. Cambon, and by Armand Pitot, agent.

On same day, June 28, 1870, Evariste Hebert executed a special mortgage on the whole plantation in favor of his children to secure them from loss they might sustain by reason of allowing the said notes to be pledged for his debts. This mortgage was accepted by Pitot, agent, by virtue of the same power. In April, 1871, Evariste Hebert entered into a contract of antichresis of this plantation with Joseph Avet, to which some of the children of Hebert gave their consent.

The notes given by Evariste Hebert for the price, and held by Widow Avet, not being paid, she, in 1873, took executory process to foreclose the mortgage, in the district court of Assumption. This sale was enjoined by the heirs of Hebert's deceased wife, Eulalie Labadie,

on various grounds, the most important of which were that the judgment of partition in the Second District Court of Orleans, the sale thereunder, the act of partition, and the notes and mortgage given by Evariste Hebert for the price, and all other proceedings connected therewith, were null and void, because the said court was without juris-diction *ratione materiæ* and *ratione personæ*, and because the heirs of Eulalie Labadie, deceased wife, who were owners of one undivided fourth of said property, were not parties thereto. All those who were parties to the partition suit and to the act of partition of June 28, 1870, and all the children of Mrs. Hebert (one of the ten having in meantime died in minority) were parties to this suit. There was a final judgment in favor of plaintiffs, declaring and decreeing "that all the proceedings taken and had in the matter" of the said partition suit, "commencing with the petition filed therein December 24, 1869, and up to and includ-ing the decree of homologation of partition therein rendered on July 19, 1870, be and they are hereby adjudged and decreed to be absolutely null, and in their entirety absolute nullities, and especially the judg-ment rendered in said matter on January 31, 1870, and signed February 4, 1870, the sale made on March 26, 1870, the notes given by Evariste Hebert as adjudicatee under the sale of March 26, 1870, and the parti-tion in said matter, made before Selim Magner on June 28, 1870, be and the same are hereby declared, in their entirety, absolute nullities." The judgment then declares and establishes the joint ownership of Evariste Hebert and his children for half, and the widow and heirs of Avet for half in the plantation, as though said proceedings had never been had.

The judgment then reserves and declares not adjudicated by it "any questions of the rights and obligations, as between themselves, of Evariste Hebert, Widow Avet, Cambon, and any of the heirs of Mrs. Hebert, *in so far as the same are consistent with the present decree, set-ting the said proceedings aside as absolute nullities.*" This judgment has become *res adjudicata.*

In 1875 Mrs. Chatenond, one of the heirs of Frederick Avet, insti-tuted the suit now before the court for a partition of the plantation. Under these proceedings the plantation has been sold and bought by Widow Avet (now Mrs. Ballu) for $10,000. The contest arises as follows: Mrs. Ballu (Widow Avet) files a third opposition herein, claiming to be a creditor of Evariste Hebert and the heirs of his deceased wife for a large amount; claiming to be paid by preference out of their share of the funds, proceeds of the sale; claiming to hold as transferee the rights of Cambon, and averring that Evariste Hebert and his children are estopped by their acts and admissions in the notarial partition of June 28, 1870, and of antichresis April 3, 1871, from taking any part of said funds before her claims are paid. The heirs of Mrs. Hebert answer

this opposition by pleading the judgment in the injunction suit as *res adjudicata;* that any admissions made by them were made in error; that they are the *first* mortgage creditors of their father, who had received and used during the marriage $9400 of their deceased mother's paraphernal funds; that their legal mortgage therefor had been duly preserved and its amount fixed by the account of tutorship, etc. Evariste Hebert answered to same effect, and pleaded in compensation and reconvention the sum of $2400, paid by him to Mrs. Avet, under the partition proceeding and sale.

There is no doubt about the correctness of this claim of Hebert's children for $9400; nor that it is secured by the first mortgage on his share of the property. Nor is it worth while to discuss the question of the liability of such of those children as were not majors and parties to the act of partition of June 28, 1870. No part of the debt due to Cambon or to Mrs. Avet is shown to be chargeable to them; and they are in no way affected by the act of June 28, 1870, or any other of the proceedings detailed herein.

We, therefore, find it only necessary to discuss the effect of those proceedings upon the rights of Evariste Hebert and the five children represented by Pitot in said act of June 28, 1870.

In that act Evariste Hebert undoubtedly acknowledges an indebtedness to Cambon of $3372 86½; being for his half of the plantation debts, etc., and $468 50 due by him individually; which sum he and Cambon agree shall be paid by April 1, 1871. In order to secure that debt, he, with the consent of the five children (who declare themselves interested therein, in right of their deceased mother), placed the five notes, executed by himself, and falling to himself, as his share of the proceeds of sale, in the hands of Pitot and Magner, as a pledge. He does not give any mortgage to secure Cambon's debt, but pledges notes which are secured by vendor's lien and mortgage, and his children are declared to have an interest in those notes.

The children in no manner bind themselves to pay Cambon; nor do they renounce in his favor their legal mortgage on the father's property for paraphernal claims of their mother. If they were held to be bound by this act, and estopped from disputing the validity of their father's title to the whole property, by reason of having asserted an ownership in the notes given for the price, we do not see how this would help Cambon's claim as to the father's interest in this controversy. If the purchase by Evariste Hebert is valid as against these consenting children, it is only by effect of that consent, and not by effect of a judicial proceeding. If by claiming an interest in the notes given by the father they are estopped, it is only from denying the validity of his purchase of *their* share in the property. They are in no way estopped

from asserting their preference as mortgage creditors on the share of their father in the property. The acquisition of the father being merely conventional, and limited to the interests of his co-proprietors in the property, did not and could not change or affect his title to his own share therein, and any mortgage granted by him in this act of purchase from his co-proprietors could not supersede or take precedence of the pre-existing mortgage of his children as to that. Nor can we infer a renunciation of this pre-existing mortgage from the fact that these children, holding also an interest in notes secured by the second mortgage, consented to their being pledged for a debt which they did not owe or assume to pay. See Newell vs. Buckner, 24 An. 185.

But as we have said, the only estoppel that could, by any construction, be pleaded against these consenting children, as resulting from the act of June 28, 1870, would be that they could not dispute the validity of their father's purchase of *their interest* in the property. That estoppel could, and *indeed of necessity had to* be pleaded in defense of the suit *brought by these children* to annul the sale to their father. If *not* then urged, *it was waived.* If pleaded in that suit, it was necessarily rejected and disallowed by the judgment which declared the sale a nullity. This judgment of nullity of the sale is *utterly inconsistent with the existence of the estoppel,* and must, therefore, both *by its terms,* and on legal principles, be held to be a bar to the renewal of the plea in this case. It constitutes *the thing adjudged,* and the question of estoppel is no longer open to discussion, and does not, and indeed could not, fall within the reservations made in the judgment decreeing the nullity of the partition and sale. That judgment declared the sale to Evariste Hebert, *in its entirety, null and void.* Intervenor now asks in effect that it be held not *null and void, but good and valid quoad* the consenting children and Evariste Hebert. To so decree would be to destroy the previous decree as to these parties; to adjudicate upon a matter that is *res adjudicata.* This view renders it unnecessary for us to enter into a discussion of the questions whether these children were or ought to have been held estopped from disputing their father's title as against themselves, and therefore whether the share of proceeds of sale now to be distributed, coming to them *as owners,* should be applied to the Cambon debt. We have seen that their share, as first mortgage creditors of their father's portion, was in no wise affected or renounced by the act of June 28, 1870. But if the question were before us we incline to think that these children were not bound by their declarations and admissions in said act. That whole act rested upon the validity of the decree of partition and sale. It proceeds from beginning to end upon the hypothesis of the existence of a state of facts which did not exist, to wit: that Evariste Hebert was owner of the whole property, and that he had

secured these children against loss by the mortgage he gave them on the same day, June 28, 1870, upon the whole property. The fundamental fact upon which both these acts of June 28 rested did not exist. Evariste Hebert was not the owner. When the foundation was removed, when his title was annulled, the acts of June 28 and the reciprocal rights and obligations of the parties thereto fell with it. The notes given for the price being all in the hands of parties to the act, were stricken with nullity, for want of a cause. The mortgage securing them, being a mere accessory of the notes, perished with them. "The accessory follows the principal." Where then is *the mortgage securing the Cambon debt, or other claims* of intervenor, entitling her to be paid by preference out of the proceeds of this sale ?

Evariste Hebert may be her debtor, but she has no mortgage or privilege on his share of the proceeds of the sale. We find no sufficient proof that any part of her claim so inured to the benefit of the children of Hebert as to make them personally liable for the whole or any part thereof.

The court below decreed the proceeds to be distributed in effect as follows: one half to Evariste Hebert and his children, and one half to the widow and heirs of Frederick Avet. The share of Evariste Hebert to be paid over to his children in satisfaction *pro tanto* of their legal mortgage against him, which is recognized in their favor.

We think the judgment of the court below is correct; and it is ordered and decreed that the same be affirmed with costs.